IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| OGLALA SIOUX TRIBE, | CASE NO:  4:12-cv-03027 |
| Plaintiff, | |
| vs. | **SECOND AMENDED COMPLAINT AND JURY DEMAND** |
| JASON SCHWARTING, LICENSEE OF ARROWHEAD INN, INC.; JASON SCHWARTING D/B/A ARROWHEAD INN, INC.; SANFORD HOLDINGS, LLC, LICENSEE OF D & S PIONEER SERVICE; SANFORD HOLDINGS, LLC D/B/A D & S PIONEER SERVICE; STUART J. KOZAL, LICENSEE OF JUMPING EAGLE INN; STUART J. KOZAL D/B/A JUMPING EAGLE INN; CLAY M. BREHMER, PARTNER, LICENSEE OF STATE LINE LIQUOR; CLAY M. BREHMER, PARTNER D/B/A STATE LINE LIQUOR; DANIEL J. BREHMER, PARTNER, LICENSEE OF STATE LINE LIQUOR; DANIEL J. BREHMER, PARTNER D/B/A STATE LINE LIQUOR; PIVO, INC. D/B/A HIGH PLAINS BUDWEISER; DIETRICH DISTRIBUTING CO., INC.; ARROWHEAD DISTRIBUTING, INC.; COORS DISTRIBUTING OF WEST NEBRASKA, INC.; D/B/A COORS OF WEST NEBRASKA; ANHEUSER BUSCH INBEV WORLDWIDE, INC.; SAB MILLER D/B/A MILLER BREWING COMPANY; MOLSON COORS BREWING COMPANY; MILLERCOORS, LLC.; PABST BREWING COMPANY, | |
| Defendants. | |

COMES NOW the Plaintiff and alleges the following:

**PLAINTIFF**

1. The Plaintiff Oglala Sioux Tribe (OST) is the Federally recognized tribe of the Lakota

people.

## DEFENDANTS

2. The Defendants are all in the business of Brewing, distribution and sales of beer and or other alcohol. More specifically:

## RETAIL DEFENDANTS

3. Jason J. Schwarting, an individual, is licensed by the State of Nebraska as a retail seller of beer and other alcohol and does business as the Arrowhead Inn, Inc. in Whiteclay, Nebraska.

4. Sanford Holdings, LLC, a Nebraska limited liability company, is licensed as a retailer seller of beer and other alcohol by the State of Nebraska and does business as D & S Pioneer Service in Whiteclay, Nebraska.

5. Stuart J. Kozal, an individual, is licensed as a retail seller of beer and other alcohol by the State of Nebraska and does business as Jumping Eagle Inn in Whiteclay, Nebraska.

6. Clay M. Brehmer and Daniel J. Brehmer, partners, are licensed as retail sellers of beer and other alcohol by the State of Nebraska and doing business as State Line Liquor in Whiteclay, Nebraska.

## DISTRIBUTOR DEFENDANTS

7. Pivo, Inc., d/b/a High Plains Budweiser is a Nebraska licensed distributor of alcoholic products for Anheuser-Busch InBev and supplies such products to the previously described Retail Defendants.

8. Dietrich Distributing Co., Inc., is a Nebraska licensed distributor of alcoholic products for Pabst Brewing Company and Miller and supplies such products to the previously described Retail Defendants.

9.	Arrowhead Distributing, Inc., is a Nebraska licensed distributor of alcoholic products for Anheuser-Busch InBev, Pabst, Coors and supplies such products to the previously described Retail Defendants.

10.	Coors Distributing of West Nebraska d/b/a/ Coors of West Nebraska, Inc., is a Nebraska licensed distributor of alcoholic products for Coors, and Miller and supplies such products to the previously described Retail Defendants.

## BREWER MANUFACTURING DEFENDANTS

11.	Anheuser-Busch InBev Worldwide, Inc. is based in Belgium and is in the business of brewing, selling and supplying alcoholic beverages to Distributors and Retailers including the Defendants previously described. Anheuser-Busch InBev and various subsidiaries are permitted to and do business in the State of Nebraska.

12.	SAB Miller is a United Kingdom Company and owner of Miller Brewing Company which in turn is a United States Corporation engaged in the brewing sale and distribution of alcoholic beverages. Miller Brewing Company formed a joint venture with Molson Coors. This joint-engaged venture is the MillerCoors, LLC and is engaged in the brewing, sale and distribution of alcoholic beverages to Retailers and Distributors including the previously named Defendants. These companies are permitted to and are doing business in the State of Nebraska.

13.	Molson Coors Brewing Company is a United States Corporation with headquarters in Montreal, Canada. It is in the business of brewing, selling and supplying alcoholic beverages to Distributors and Retailers including the previously described Defendants. It is permitted to and is doing business in the State of Nebraska.

14.	MillerCoors, LLC, is a Delaware limited liability company, and which resulted from

a joint venture between Miller Brewing Company and Molson Coors Brewing Company. It is in the business of brewing, selling and supplying alcoholic beverages to Distributors and Retailers including the previously described Defendants. It is permitted to and is doing business in the State of Nebraska.

15. Pabst Brewing Company, is a United States Corporation with headquarters in Woodridge, Illinois. It is in the business of brewing, selling and supplying alcoholic beverages to Distributors and Retailers including the previously described Defendants. It is permitted to and is doing business in the State of Nebraska.

**JURISDICTION**

16. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1362.

**GENERAL ALLEGATIONS**

17. The Oglala Sioux Tribe is one of the successor entities to the Sioux tribes who entered into treaties with the federal government establishing the Great Sioux Reservation of 1868, and should therefore properly have jurisdiction over all the lands in the Great Sioux Reservation which were unlawfully taken and to which the Tribe still lays claim. In addition, the Tribe believes certain other lands have been illegally annexed, both in Nebraska and in South Dakota, and should be rightfully considered part of the Pine Ridge Indian Reservation ("PRIR"). At present, the federal government recognizes only the lands within the PRIR, the vast majority of which is located in South Dakota, as the reservation of the Oglala Sioux Tribe. PRIR has a population of about 40,000, approximately half of whom are Tribal members.

18. Whiteclay, Nebraska is a village of approximately 12 people and is located on land claimed by the Lakota people and the OST. This claim is disputed by the US Government and the

State of Nebraska, therefore the OST cannot currently exercise its jurisdiction over, and is unable to enforce Tribal laws in Whiteclay.

19. The PRIR is, and except for a brief period in the early 1970's, always has been "dry" in that within its borders the sale, possession and consumption of alcohol is illegal. Because the OST is unable to enforce Tribal law in Whiteclay, the sale of alcohol is permitted in Whiteclay.

20. Whiteclay is geographically very close to the federally recognized boundaries of PRIR. It is also less than 250 feet away from the Reservation border and the village of Pine Ridge. The village of Pine Ridge has a population of 5,700 and is the largest community within a thirty (30) mile radius of Whiteclay. The town of Pine Ridge is entirely contained within the PRIR.

21. The area around Whiteclay and outside of the PRIR where the sale, possession and consumption of alcohol is allowed, albeit regulated, is sparsely populated. The total population within many miles of Whiteclay, excluding the PRIR, is minimal.

22. Despite a population of only 12 persons, four retail only outlets for beer sales are licensed to and doing business in Whiteclay. The total volume of sales of beer from Whiteclay in the past years are: in 2004, 433,993 gallons or 4,629,258 12-ounce servings; in 2005, 421,470 gallons or 4,495,680 - 12- ounce servings; in 2006, 412,140 gallons or 4,396,160 - 12-ounce servings; in 2007, 399,466 gallons or 4,260,970 - 12-ounce servings; in 2008, 426,586 gallons or 4,550,250 - 12 oz. servings; in 2009, 431,207 gallons or 4,599,541 - 12-ounce servings; in 2010, the total was 465,092 gallons or 4,960,981 - 12-ounce servings.

23. There is no publically accessible place to lawfully consume alcohol in Whiteclay under the governing laws of Nebraska. The resale of alcohol purchased at a retail outlet like those located in Whiteclay is unlawful in Nebraska. Sale of alcohol to intoxicated persons is unlawful in

Nebraska. Exchanging sex, pornographic photos or food assistance vouchers for alcohol is unlawful in Nebraska. Transportation into, sale, or possession of alcohol in the PRIR is unlawful.

24.     Despite the applicable laws, vast amounts of beer are sold in Whiteclay and/or illegally transported, possessed, resold and consumed in the PRIR. The volume of alcohol sold in Whiteclay far exceeds the amount that could be legally sold and consumed.

25.     The illegal sale and trade in alcohol in Whiteclay is open, notorious and well documented by news reports, legislative hearings, movies, public protests and law enforcement activities such as road blocks set up between Whiteclay and the PRIR. All of the above have resulted in the publication of the facts of the illegal trade in alcohol and its devastating effects on the Lakota people, especially its children, both born and unborn.

26.     The above described publicity and efforts have been unsuccessful in impeding the flood of alcohol which mortally threatens the Lakota people, their culture and future. OST has the obligation to and attempts to provide healthcare for its members, social services for families, foster care for at risk children, education for its children and a judicial system for all residents of the PRIR.

27.     The Defendants who are in the business of making and distributing the alcohol sold in Whiteclay actually knew or at the very least should have known of the facts described above for over ten years.

28.     Alcohol is a devastating drug to the Lakota people. On the PRIR the dominant type of alcohol consumed is malt beverages. Beer is in fact regularly described as the "crack cocaine" of the PRIR. The vast majority of beer consumed in the town of Pine Ridge and the PRIR is sold in Whiteclay establishments.

29.     The devastating and horrible effects of alcohol on the OST and the Lakota people

cannot be overstated. One (1) in four (4) children born on the PRIR are diagnosed with either fetal alcohol syndrome (FAS) or Fetal Alcohol Spectrum Disorder (FASD).

30. The average life expectancy on the PRIR is estimated to be between 45 and 52 years. Only in Haiti is there a shorter life expectancy in North America. The average American life expectancy is 77.5 years.

31. Approximately fifty percent (50%) of the adults on the Reservation over the age of 40 have diabetes. Tuberculosis rates among the Lakota people run at 800 percent higher than America as a whole.

32. Teen suicide among the Lakota people is 150% higher than America as a whole.

33. Infant mortality among the Lakota people is 300% higher than America as a whole.

34. Approximately 85% of Lakota families are affected by alcoholism.

35. Approximately 58% of grandparents of Lakota families are raising their grandchildren.

36. In 2008, the OST tribal police made 1,854 juvenile arrests and 25,437 adult arrests. Approximately 90 percent of all of these arrests were alcohol related.

37. In November of 2009, the OST tribal police made 1,263 arrests of adults. Of those arrested, 1,199 had at least one alcohol related charged offense.

38. The adverse impact on social services such as foster care, educational and medical treatment for fetal alcohol syndrome, and health care caused by alcohol has been immense. The OST does not have the resources to properly address families which have been torn apart by alcohol. There are not sufficient resources available to place children in safe homes. There is a shortage of beds for detoxification and treatment of alcohol addiction. The schools and social workers in the

PRIR are over burdened by the demands of children with learning and behavioral disorders caused by fetal alcohol syndrome and living environments poisoned by excessive consumption of alcohol.

39. The police, jails and court systems of the OST are overwhelmed by crimes caused, in whole or in part, by the illegal transport, sale and consumption of alcohol sold out of Whiteclay.

40. The Defendants and each of them knew or should have known that the ultimate sale of alcohol sold in Whiteclay would occur in the PRIR. The Defendants and each of them knew or should have known that the vast majority of the alcohol initially sold at retail in Whiteclay would in fact be smuggled into and resold on the PRIR in violation of both the OST Tribal Law and under the laws of the State of Nebraska.

41. All of the above have, and will for years to come, cost the OST millions of dollars to provide services to address the damages caused by the illegal sale, transport and consumption of alcohol. The OST does not have sufficient resources to meet the needs of the Lakota people and mitigate the damages caused by the illegal transportation, sale and consumption of alcohol on the PRIR.

42. The illegal trade in alcohol could not occur without the knowing cooperation and assistance of every Defendant in the chain of supply. Each and all of the Defendants have profited over the years by supplying vast volumes of alcohol that they knew or should have known was the essential element in an on-going illegal activity. The effects of their common enterprise and cooperation have made that illegal trade in alcohol possible and have caused devastating injuries to the Lakota people and massive financial damages to the OST.

## FIRST CAUSE OF ACTION

## PERSONS ACTING IN CONCERT

43. Plaintiff restates each and every previous allegation in support of this Cause of Action as if fully set forth herein.

44. As part of a common enterprise, the Defendants and each of them, have knowingly acted in concert to manufacture, distribute and sell beer through the Whiteclay retail outlets in amounts that cannot be legally sold, consumed or possessed under the laws of the State of Nebraska and the OST.

45. The Defendants and each of them, know or should know that the Retail Defendants' conduct in the sale of the vast amount of beer which is smuggled into and resold in the Reservation is in breach of their duties under the law of the State of Nebraska, the OST and the United States of America.

46. The Defendants and each of them give substantial assistance and encouragement to the Retail Defendants by supplying and transporting volumes of beer far in excess of an amount that could be sold in compliance with the laws of the State of Nebraska and the OST. The Defendants and each of them, also give further substantial assistance and encouragement to the Retail Defendants through advertisements, marketing materials, and other business accommodations to promote the consumption of beer in the PRIR.

47. The Defendants and each of them have the duty to make reasonable efforts to ensure their products are distributed and sold in obedience to the laws of the State of Nebraska and the OST. The Defendants and each of them have breached that duty by cooperating and engaging in a common enterprise which is focused on assisting and participating in the illegal sale of alcohol.

48. The Defendants and each of them have thereby caused the OST to suffer massive damages in an amount yet to be determined.

## SECOND CAUSE OF ACTION

49. The Plaintiff restates each and every previous allegation in support of this cause of action as if fully set forth herein.

50. Congress in 18 U.S.C. § 1161 prohibits the sale of alcohol in Indian country unless the sale is made in conformity with the laws of the State in which such act(s) or transaction(s) occurs and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country, certified by the Secretary of the Interior and published in the Federal Register.

51. The sales of alcohol as previously alleged violate both the laws of Nebraska and of the OST. The sales begin in Nebraska and end in Indian country, as defined by the laws of the United States, and under the jurisdiction of the Plaintiff OST.

52. The Defendants, and each of them have cooperated in a common scheme or enterprise and thereby conspired to violate 18 U.S.C. § 1161 to the injury of the Plaintiff OST.

## THIRD CAUSE OF ACTION

53. The Plaintiff restates each and every previous allegation in support of this cause of action as if fully set forth herein.

54. It is not reasonable to expect that in the future the State of Nebraska will enforce its laws regulating the sale of alcohol in Whiteclay. The violation of those laws make the illegal trade in alcohol as it now exists on the PRIR possible. The OST itself cannot enforce those laws. The Chief Law Enforcement Officer of the State of Nebraska Attorney General John Bruning on February 12, 2012 stated:

> Attorney General Bruning says "the lawsuit involving the Pine Ridge Reservation's lawsuit against beer makers, distributors and retailers in Whiteclay is something Nebraska shouldn't be involved in.
>
> Bruning says he has visited Pine Ridge several times and admits it is one of the saddest things a person could see. He says there is alcoholism and poverty. He says the solution is not shutting down the beer stores in Whiteclay. He stated that he "despised" the beer sellers in Whiteclay but if the state shuts them down it is feared Pine Ridge residents will then travel to other areas to buy the beer. That puts travelers at danger as possible intoxicated drivers are on the roads.
>
> Bruning says the federal government spends lots of money on reservations but it seems that for every step they want to take for improvements they hit a road block. He says when Tom Osborne served in the House he was able to secure $100,000 to improve law enforcement with a cross-deputization agreement with the reservation. Bruning says that roadblock turned out to be that all of the law enforcement at Pine Ridge had a felony conviction and under Nebraska state law they could not be certified.
>
> Bruning adds if there is money awarded in this or any other lawsuit he fears individuals who receive a portion will spend it on alcohol.
>
> A true and correct copy of these remarks is attached as Exhibit "A" to this Complaint.

55. Despite years of protests and repeated demands from the OST, the State of Nebraska has been unable or unwilling to enforce its laws regarding the sale of alcohol at Whiteclay for delivery to the PRIR.

56. The future rights of the Oglala Sioux Tribe to control sales and possession of alcohol on the PRIR is being destroyed by the actions of the Defendants and the inaction of the State of Nebraska.

57. There are no adequate remedies at law available for the OST to enforce its Federally granted rights under 18 U.S.C. § 1161 and to protect its sovereignty over the use and possession of alcohol and the integrity of its borders, and therefore the OST requests this Court to uphold the

Federal law in this matter by granting injunctive relief against the named Defendants.

58. The OST respectfully suggests that such injunctive relief take the form of an Order limiting the total volume of beer sold by the Defendants out of Whiteclay stores to an amount that can reasonably be consumed in accordance with the laws of the State of Nebraska and the OST. Such an order will protect the balance contemplated by Congress 18 U.S.C. § 1161 between the State of Nebraska's right to regulate alcohol within its borders and the OST's right to do the same within the PRIR.

## FOURTH CAUSE OF ACTION
## PUBLIC NUISANCE

59. The Plaintiff restates each and every previous allegation in support of this cause of action as if fully set forth herein.

60. The Oglala Sioux Tribe is responsible for the health, safety, and welfare of its approximately 25,000 members living on the Pine Ridge Reservation. The Oglala Sioux Tribe is acting on behalf of its members under the doctrine of parens patriae.

61. The actions of Defendants have created a public nuisance inside the Pine Ridge Reservation by interfering with the safe and unimpeded use of the streets, sidewalk and other public spaces by the members of the Oglala Tribe living in or visiting the Pine Ridge Reservation. Such interference includes, but is not limited to, public intoxication, driving of automobiles while under the influence of alcohol and a wide variety of crimes committed by intoxicated persons in public spaces in the Pine Ridge Reservation.

62. The actions of Defendants have created a public nuisance by endangering and

injuring the property, health, safety and comfort of a considerable number of individual members of the OST.

### FIFTH CAUSE OF ACTION
### PRIVATE NUISANCE

63. The Plaintiff restates each and every previous allegation in support of this cause of action as if fully set forth herein.

64. The OST is the beneficial owner of land located in the Pine Ridge Reservation.

65. The actions of the Defendants as previously alleged have interfered with the use and enjoyment of that land including, but not limited to, the ability to develop and enhance the value of that land. As a result, the value of the land owned by the OST is depressed due to the illegal unreasonable conditions created by the Defendants.

WHEREFORE, Plaintiff prays for injunctive relief to halt further violations of 18 U.S.C. § 1161 and associated laws of the United States of America along with an award of money fully compensating it for all damages it has suffered in the past and is reasonably likely to suffer in the future caused by the past actions of the Defendants as established at trial.

OGLALA SIOUX TRIBE, Plaintiff,

BY:    s /Thomas M. White
         C. Thomas White, #14488
         Thomas M. White, #17452
         Amy S. Jorgensen, #23215
         WHITE & JORGENSEN
         209 So. 19th Street, Suite #310
         Omaha, NE 68102
         (402) 346-5700

         ATTORNEYS FOR PLAINTIFF

## DEMAND FOR JURY AND LOCATION OF TRIAL

The Plaintiff hereby demands a trial by jury and designates Lincoln, Lancaster County, Nebraska as the place of trial.

s/ Thomas M. White

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following attorneys:

Robert S. Keith
Timothy R. Hook
Engles, Ketcham, Olson & Keith, P.C.
1700 Farnam Street
1350 Woodmen Tower
Omaha, NE 68102
***Attorneys for Jason Schwarting, Licensee and d/b/a Arrowhead Inn, Inc.***

James P. Fitzgerald
McGrath North Mullin & Kratz, P.C.
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102

James Russell Jackson
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square, 24th Floor
New York, NY 10036
and
Edward Crane
Skadden, Arps, Slate, Meagher & Flom LLP
155 N. Wacker Drive
Chicago, IL 60606
***Attorneys for Anheuser Busch InBev Worldwide, Inc.***

Donald JB Miller
Miller Law Office
1113 Tenth Avenue
PO Box 15
Sidney, NE   69162
***Attorney for Arrowhead Distribution Co., Inc.***

Jerald L. Rauterkus
Patrick R. Guinan
Erickson Sederstrom, P.C.
10330 Regency Parkway Drive
Omaha, NE 68114
***Attorneys for Clay M. Brehmer & Daniel J. Brehmer Partners, Licensee and d/b/a State Line Liquor***
***Attorneys for Dietrich Distributing Co., Inc.***

David D. Ernst
Donald J. Kleine
Pansing Hogan Ernst & Bachman LLP
10250 Regency Circle, Suite 300
Omaha, NE 68114
***Attorneys for Pivo, Inc. d/b/a/ High Plains Budweiser***
***Attorneys for Coors Distributing of West Nebraska, Inc. d/b/a Coors of West Nebraska***

William M. Lamson, Jr.
Lamson Dugan and Murray, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
***Attorney for MillerCoors, LLC; SABMILLER d/b/a Miller Brewing Company and, Molson Coors***

Richard P. Jeffries
Cline, Williams, Wright, Johnson & Oldfather, L.L.P.
One Pacific Place
1125 South 103rd Street, Ste 600
Omaha, NE 68124
and
Paul E. Benson
Michael Best & Friedrich LLP
100 E. Wisconsin Ave., Ste. 3300
Milwaukee, WI 53202
***Attorneys for Pabst Brewing Company***

Stephen L. Ahl
Wolfe, Snowden, Hurd, Luers & Ahl, LLP
Wells Fargo Center
1248 "O" Street, Ste. 800
Lincoln, NE 68508
***Attorney for Sanford Holdings, LLC, Licensee and d/b/a/ D&S Pioneer Service***

Randall L. Goyette
Baylor, Evnen, Curtiss, Grimit & Witt, LLP
Wells Fargo Center
1248 "O" Street, Suite 600
Lincoln, NE 68508
***Attorney for Stuart J. Kozal Licensee and d/b/a Jumping Eagle Inn***


    s/Thomas M. White