IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| OGLALA SIOUX TRIBE, | |
| Plaintiff, | 4:12-CV-3027 |
| vs. | |
| JASON SCHWARTING, et al., | MEMORANDUM AND ORDER |
| Defendants. | |

The plaintiff, the Oglala Sioux Tribe, has sued several manufacturers, distributors, and retailers of beer and other alcoholic beverages, for damages arising out of the sale of alcohol in Whiteclay, Nebraska, for consumption on the nearby Pine Ridge Indian Reservation. The defendants have filed motions to dismiss the Tribe's complaint, arguing that it fails to state a claim for relief. But the initial question for the Court is whether the Tribe's complaint states a claim that belongs in federal court.

The Court is in no position, procedurally or factually, to question many of the allegations made in the Tribe's complaint. There is, in fact, little question that alcohol sold in Whiteclay contributes significantly to tragic conditions on the Reservation. And it may well be that the defendants could, or should, do more to try and improve those conditions for members of the Tribe. But that is not the same as saying that a federal court has jurisdiction to order them to do so. Whatever merits the Tribe's claims may have, they are not claims that involve a question of federal law. They involve state law, and federal courts lack jurisdiction to decide them. Therefore, the Tribe's claims will be dismissed without prejudice to potentially reasserting them in state court.

## BACKGROUND

The Tribe is the federally recognized tribe of the Lakota people, and it controls the Reservation. Filing 109 at 1-2.[1] The defendants are all in the

---

[1] Because the defendants' motions to dismiss have been primarily filed pursuant to Fed. R. Civ. P. 12(b)(6), and because the jurisdictional issue that disposes of this case is decided on the face of the Tribe's complaint, all of the facts are taken as stated in the Tribe's operative pleading. *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990); *see also Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127-28 (1974) (federal questions, for jurisdictional purposes, must be disclosed on face of complaint).

business of manufacturing, distributing, or selling beer and other alcohol. Filing 109 at 2. Whiteclay is a small village near the Reservation border—but outside it, so the Tribe cannot enforce tribal laws in Whiteclay.[2] Filing 109 at 4-5. Possession, sales, and consumption of alcohol are illegal on the Reservation, but sales are permitted in Whiteclay. Filing 109 at 5.

Beer sales in Whiteclay are far beyond what might be reasonably expected for a village of its size: Whiteclay has a legal population of 12 people, but in 2010 nearly 5 million 12-ounce servings of beer were sold there. Filing 109 at 5. Most of that beer was sold to residents of the Reservation, and much of it was illegally consumed on the Reservation. Filing 109 at 6. Alcoholism is rampant on the Reservation. Filing 109 at 6-7. The associated effects on the health of the Tribe, its social structures, and its economy, are well documented and need not be restated in detail here. *See* filing 109 at 6-8.

The Tribe's complaint identifies several claims for relief that, according to the Tribe, are supported by those facts. The first claim for relief, "persons acting in concert," (a/k/a civil conspiracy) alleges that the defendants are engaged in a common enterprise to sell beer through Whiteclay "in amounts that cannot be legally sold, consumed or possessed under the laws of the State of Nebraska and the [Tribe]." And because much of that beer is smuggled onto the Reservation and unlawfully consumed or resold there, the Tribe also alleges that the defendants' conduct is "in breach of their duties under the law of the State of Nebraska, the [Tribe] and the United States of America." Filing 109 at 9.

The relevant federal law is identified in the Tribe's second claim for relief: 18 U.S.C. § 1161, by which "Congress 'delegated authority to the States as well as to the Indian tribes to regulate the use and distribution of alcoholic beverages in Indian country.'" *City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554, 556 (8th Cir. 1993). Generally, the introduction of alcohol into "Indian country" is prohibited by federal law. *See* 18 U.S.C. §§ 1154, 1156, 3113, 3488, and 3669; *see also City of Timber Lake*, 10 F.3d at 557. Pursuant to § 1161, state and tribal governments may effectively legalize alcohol, but such has not been done on the Reservation. Filing 109 at 10. The Tribe alleges a civil conspiracy to violate § 1161.

In its third claim for relief, the Tribe seeks an injunction limiting the amount of alcohol that can be sold in Whiteclay, alleging that the State of Nebraska is either unwilling or unable to enforce laws regarding the sale of alcohol in Whiteclay for delivery to the Reservation. Filing 109 at 10-12. The

---

[2] The Tribe alleges that Whiteclay is located on land that is claimed by the Lakota, although the United States disputes that claim. It is not disputed that the Tribe has no current authority in Whiteclay, and no territorial claim is presented in this case.

Tribe's fourth claim for relief accuses the defendants of creating a public nuisance, based upon the effects of alcohol use on the Reservation, and the Tribe's fifth and final claim for relief accuses the defendants of creating a private nuisance interfering with the Tribe's ability to develop Reservation land. Filing 109 at 12-13.

The defendants have filed motions to dismiss pursuant to Rule 12(b)(6) and, in one instance, Rule 12(b)(1) as well. Generally characterized, the defendants contend that the Tribe lacks standing to sue, that the allegations of concerted action among the defendants are lacking, that there is no private right of action under § 1161, and that the allegations of public and private nuisance are insufficient. Filings 114, 115, 116, 118, 120, 121, 122, 125, 129, and 131. This case is before the Court now on those motions. But the Court does not reach their merits because, as explained below, the Court finds it lacks jurisdiction to do so.

## ANALYSIS

It is well established that a court has a special obligation to consider whether it has subject-matter jurisdiction in every case. *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011). This obligation includes the concomitant responsibility to consider the court's subject-matter jurisdiction *sua sponte* where the court believes jurisdiction may be lacking. *Id.*

"[I]t is clear that an Indian tribe is not a citizen of any state and cannot sue or be sued in federal court under diversity jurisdiction." *Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135, 1140 (8th Cir. 1974); *accord Auto-Owners Ins. Co. v. Tribal Ct. of the Spirit Lake Indian Res.*, 495 F.3d 1017, 1020 (8th Cir. 2007); *see* 28 U.S.C. § 1332(a)(1). Nor are Indian tribes[3] foreign states. *Auto-Owners Ins. Co.*, 495 F.3d at 1021 (citing *Gaming World Int'l v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 847 (8th Cir. 2003)); *see* § 1332(a)(4).

Because diversity jurisdiction is unavailable, federal jurisdiction in this case must rest, if at all, on the existence of a federal question. The Tribe's complaint cites 28 U.S.C. § 1362, which confers the Court with "original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the

---

[3] The Court is well aware of the controversy regarding the appropriate terminology for the various indigenous peoples of North America. *See generally*, Wikipedia, *Native American name controversy*, http://en.wikipedia.org/wiki/Native_American_name_controversy (last visited Oct. 1, 2012). Because the relevant case law and statutes generally use the term "Indian," the Court has elected to use that term as well, for the sake of clarity and consistency.

United States." And § 1362 is obviously relevant here. But § 1362 is better explained by reference to the more familiar, general federal-question jurisdiction conferred by 28 U.S.C. § 1331. So, the Court will first consider whether there is a federal question in this case within the meaning of § 1331. Then, the Court will return to § 1362.

### 28 U.S.C. § 1331

Section 1331 provides that a federal district court "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A suit arises under the law that creates the cause of action. *Mims v. Arrow Fin. Servs.*, 132 S. Ct. 740, 748 (2012). So generally, when federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331. *Mims*, 132 S. Ct. at 748-49. In such an instance, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. *Phillips Petroleum*, 415 U.S. at 127.

Or, a state-law claim can give rise to federal-question jurisdiction so long as it appears from the complaint that the right to relief depends upon the construction or application of federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-13 (2005). But such federal-question jurisdiction is limited to state-law claims that "'really and substantially'" involve a dispute or controversy respecting the validity, construction, or effect of federal law. *Id.* at 313. In other words, the plaintiff's right to relief must *necessarily* depend on resolution of a substantial question of federal law. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006). The Supreme Court has repeatedly cautioned that in such cases, federal jurisdiction demands not only a contested federal issue, but a *substantial* one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum. *Grable & Sons*, 545 U.S. at 313 (collecting cases). And the presence of a tribal sovereign as a party is not by itself sufficient to raise a federal question. *See Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 949 (9th Cir. 2004).

The basis for federal jurisdiction proffered by the Tribe—and the only real candidate presented by the Tribe's allegations—is § 1161. As noted above, there are several statutes—primarily §§ 1154 and 1156—that make the introduction of alcohol into Indian country a criminal offense. And § 1161 suspends the operation of those statutes where state and tribal governments act to permit alcohol. Congress intended § 1161 to remove federal discrimination that resulted from imposing liquor prohibition on Indians, and to delegate a portion of its authority to the tribes as well as to the States, so

as to fill the void that would be created by the absence of the discriminatory federal prohibition. *Rice v. Rehner*, 463 U.S. 713, 733 (1983). The Tribe contends that a federal question is presented because "§ 1161 specifically addresses the very issues raised by this lawsuit[,]" and points out that a number of federal courts "have addressed issues arising out of this statute." Filing 141 at 3.

But just because *other cases* involved issues arising out of § 1161 does not mean that *this case* involves issues arising out of § 1161. And contrary to the Tribe's contention, § 1161 does not address the circumstances of this case. There is no dispute that alcohol is illegal on the Reservation under § 1161. Nor is there any dispute that § 1161 does not provide the Tribe with authority to regulate alcohol sales in Whiteclay—as the Tribe readily admits.[4] So although § 1161 and this lawsuit both generally involve the presence of alcohol in Indian country, § 1161 has no *direct* application here.

The problem for the Tribe is that none of the statutes cited create a private cause of action that it can allege. Sections 1154 and 1156 are criminal statutes, and § 1161 simply confers authority on the Tribe to suspend operation of §§ 1154 and 1156—authority that the Tribe has concededly not exercised. The presence of a criminal statute neither creates nor implies a corresponding private right of action. *Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1061 (D. Minn. 2009) (citing *United States v. Wadena*, 152 F.3d 831, 845-46 (8th Cir. 1998)); *see Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190-91 (1994); *Frison v. Zebro*, 339 F.3d 994, 999-1000 (8th Cir. 2003); *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408-09 (8th Cir. 1999). Private citizens generally have no standing to institute federal criminal proceedings. *Kunzer,* 667 F. Supp. 2d at 1061 (collecting cases).[5] Though a bare criminal statute does not necessarily preclude an implied private right of action, there must be a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone. *Wisdom*, 167 F.3d at 408. And the presence of criminal penalties, while not dispositive, suggests (in the absence of an expressly created private remedy) that Congress was not concerned with creating private rights or remedies in enacting the legislation. *See California v. Sierra Club*, 451 U.S. 287, 294-95 (1981).

In sum, the Tribe's attempt to gin up a conspiracy "to violate 18 U.S.C. § 1161[,]" *see* filing 109 at 10, would be more accurately characterized as describing a conspiracy to violate §§ 1154 and 1156—and there is no basis for

---

[4] *Compare, e.g., Native Vill. of Tyonek v. Puckett*, 957 F.2d 631, 634 (9th Cir. 1992).

[5] And both §§ 1331 and 1362 are restricted to conveying jurisdiction over civil actions. *Kaw Nation v. Springer*, 341 F.3d 1186, 1188 (10th Cir. 2003).

finding any private right of action to enforce those crimes, even if the Tribe has sufficiently alleged that the defendants violated them. *See, Cent. Bank, 511 U.S. at 190-91; Frison, 339 F.3d at 999-1000; Wisdom, 167 F.3d at 408-09*. They are "bare criminal statute[s]" with "no support for a private cause of action" that the Court can discern. *See Wisdom, 167 F.3d at 408*.

Given that conclusion, it is evident (if it wasn't before) that the Tribe's claim does not "arise under" § 1161 within the meaning of § 1331. Nor, in this case, does the vindication of a right under state law turn on some construction of § 1161. In considering such matters, courts have looked to whether the allegedly federal element of a claim is "pivotal" or "substantial" as opposed to merely "incidental," or whether it was "direct and essential" as opposed to "collateral." *Berg v. Leason, 32 F.3d 422, 424 (9th Cir. 1994)*. Thus, the resolution of the federal question must play a significant role in the proceedings. *Id.* But here, it is not at all clear what the federal "question" is, much less whether it is significant.

The Tribe does not contend that resolution of this suit revolves around any *particular* disputed issue of federal law. *See Bennett v. Sw. Airlines Co., 484 F.3d 907, 909 (7th Cir. 2007)*. The Tribe identifies § 1161 as a source of "public policy" that, in part, defines the tort duties that the defendants have allegedly breached. Filing 141 at 29, 34. But the Supreme Court has expressly rejected the conclusion that the use of federal standards to support a state tort claim gives rise to a federal question for purposes of § 1331. *Grable & Sons, 545 U.S. at 318-19*. Such a rule, the Court explained, would "have heralded a potentially enormous shift of traditionally state cases into federal courts." *Id. at 319*. The Tribe's theory would extend *Grable & Sons*, and federal-question jurisdiction, well beyond the scope that the Supreme Court has suggested is appropriate. *See Bennett, 484 F.3d at 909*. While *Grable & Sons* emphasized the importance of providing a federal forum for substantial questions of federal law, there is no such issue of law here—at most, this case could be described as presenting a fact-specific application of rules that come from both federal and state law, rather than a context-free inquiry into the meaning of a federal law. *See Bennett, 484 F.3d at 910; accord Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1299 (11th Cir. 2008); see also Singh v. Duane Morris LLP, 538 F.3d 334, 339 (5th Cir. 2008)*. The meaning of the relevant federal law is not unclear. *See Adventure Outdoors, 552 F.3d at 1300-01*.

And more importantly, the absence of a private right of action under § 1161 also precludes a finding that an issue arising under § 1161 can give rise to federal-question jurisdiction under § 1331. The Supreme Court has explained that even when a state-law action discloses a contested and substantial federal question, "the exercise of federal jurisdiction is subject to

- 6 -

a possible veto." *Grable & Sons*, 545 U.S. at 313. The federal issue "will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable & Sons*, 545 U.S. at 313-14.

The ultimate import of concluding that there is no federal private cause of action is that it would flout congressional intent to provide a private federal remedy for the violation of the federal statutes. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 812 (1986). And "it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute" because the statute is said to be part of a state-law claim. *See id.* at 812. Given the significance of a congressional determination to preclude federal private remedies, "the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Id.* at 814. So, the congressional determination that there should be no federal remedy for the violation of a federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction. *Id.* Simply put, "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States'" within the meaning of § 1331. *Merrell Dow*, 478 U.S. at 817; *see also, e.g., Adventure Outdoors*, 552 F.3d at 1295; *Mulcahey v. Columbia Organic Chem. Co., Inc.*, 29 F.3d 148, 152-53 (4th Cir. 1994).

In sum, the outcome of this case would not be controlled or conditioned by federal law because the real substance of the controversy centers upon something other than the construction of federal law. *See Longie v. Spirit Lake Tribe*, 400 F.3d 586, 590-91 (8th Cir. 2005); *e.g., Peabody Coal*, 373 F.3d at 951-52; *Boe v. Fort Belknap Indian Community of Ft. Belknap Reservation*, 642 F.2d 276, 279 (9th Cir. 1981). There is no federal question here within the meaning of § 1331.[6]

---

[6] In addition, the Court notes that even if § 1161 presented a federal question for jurisdictional purposes, it is far from certain whether even that would satisfy § 1331. The Tribe cites § 1161 for jurisdictional purposes, but its underlying state-law claims are grounded both in federal and state law. It has been held that if a claim is supported not only by a theory establishing federal subject-matter jurisdiction, but also by an alternative

28 U.S.C. § 1362

But the Tribe relies on § 1362 for jurisdiction. As noted above, § 1362 confers the Court with "original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." Obviously, § 1362 describes the Court's federal-question jurisdiction in terms similar to those of § 1331. At the time § 1362 was enacted, § 1331 contained a $10,000 amount-in-controversy requirement, and the primary purpose of § 1362 was to remove the amount-in-controversy requirement for Indian tribes seeking to pursue federal-question claims in federal court. *See, Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 784 (1991); *Gila River Indian Cmty. v. Henningson, Durham & Richardson*, 626 F.2d 708, 710 (9th Cir. 1980); *Mescalero Apache Tribe v. Martinez*, 519 F.2d 479, 481 (10th Cir. 1975). Given § 1362's "similarity to any number of other grants of jurisdiction to district courts to hear federal-question claims" and considering it "in the context of its enactment, one might well conclude that its *sole* purpose was to eliminate any jurisdictional minimum for 'arising under' claims brought by Indian tribes." *Blatchford*, 501 U.S. at 783-84 (emphasis in original). This would suggest that § 1331, which no longer contains an amount-in-controversy requirement, might now have subsumed § 1362.

The Supreme Court, however, promulgated a slightly broader construction of § 1362 in *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463 (1976), and the scope of that construction will dictate whether the Tribe's claim in this case falls within § 1362 despite falling outside § 1331. The Supreme Court has recognized the standing of the United States, as a trustee, to sue on behalf of an Indian tribe, based on "its guardianship over the Indians" and "its right to invoke the aid of a court of equity in removing unlawful obstacles to the fulfillment of its obligations[.]" *United States v. Minnesota*, 270 U.S. 181, 194 (1926); *see also, Moe*, 425 U.S. at 473-74; *Heckman v. United States*, 224 U.S. 413, 437-39 (1912). In *Moe*, the Supreme Court found the legislative history of § 1362 to suggest that "in certain respects tribes suing under this section were to be accorded treatment similar to that of the United States had it sued on their behalf." 425 U.S. at 474.

But *Moe*'s construction of § 1362 was qualified in two important respects. First, the United States' standing to sue as a trustee was and is limited. And second, even that limited authority was accorded to Indian tribes under § 1362 only in "some respects." *Moe*, 425 U.S. at 473.

---

theory which would not establish such jurisdiction (such as a theory grounded solely in state law), then federal subject-matter jurisdiction does not exist. *Mulcahey*, 29 F.3d at 153.

First, the United States' standing to sue as a trustee is not unlimited. Generally, such standing has been presented in the context of disputes over Indian land: for instance, state alienation of the land, *see Minnesota*, 270 U.S. 181; conveyances by Indians, *see Heckman*, 224 U.S. 413; or state taxation of the property, *see Moe*, 425 U.S. 463; *see also United States v. Rickert*, 188 U.S. 432 (1903). So, the United States' standing has been grounded in *its own* interests, as guardian for the Indians and in preserving the rights and obligations that had been created by the United States in arranging its affairs with the Indians. As explained in *Heckman*, "[w]hile relating to the welfare of the Indians, the maintenance of the limitations which Congress has prescribed as a part of its plan of distribution is distinctly an interest of the United States." 224 U.S. at 437. Thus, the United States was said "'to have an active interest in the proper disposition of allotted Indian lands'" such that it was necessary for the United States to be "'made a party to controversies concerning the same, for the purpose of securing a harmonious and uniform operation of the legislation of Congress on the subject.'" *Heckman*, 224 U.S. at 442 (quoting *McKay v. Kalyton*, 204 U.S. 458, 469 (1907)). As the *Heckman* Court explained:

> Not only was the United States entitled to prosecute this suit by virtue of the interest springing from its peculiar relations to the Indians and the course of dealing which had finally led to the plan of separate allotments, accompanied by restrictions for the protection of the allottees, but Congress has explicitly recognized the right of the government thus to enforce these restrictions, and has made appropriations for the maintenance of suits of this description. And, at least, the power of Congress to authorize the government to sue, in view of the relation of the United States to the subject-matter and of the nature of the question to be determined, cannot be doubted.

224 U.S. at 442.

In other words, the United States' standing to bring a civil claim as a trustee on behalf of Indian tribes is not absolute, nor is it grounded in a general eleemosynary or *parens patriae* interest in the well-being of Indians. Rather, it is grounded in the United States' authority to vindicate *its own interest* in preserving the protections it has established for Indian property rights. It is important to recognize that the issue in those cases was standing, not the presence of a federal question—in fact, a federal question was necessarily presented by virtue of the federal interests at issue. The effect of this line of cases is to permit the United States to maintain a civil action to

protect Indian property rights from alienation or taxation, despite the fact that the United States no longer has a direct pecuniary interest in the dispute. And § 1362, according to *Moe*, was intended to permit tribes to bring such claims in federal court in instances where the United States has declined to act. *Moe*, 425 U.S. at 474; *see also Gila River*, 626 F.2d at 713.

No comparable circumstances are present here. Although the Tribe's allegations rely on a federally enacted protection, see §§ 1154 and 1156, those statutes do not protect the Tribe's property rights in the same manner as the protections at issue in the case law discussed above. The "common thread" running through cases that extend the jurisdictional reach of § 1362 is that "they all involved possessory rights of the tribes to tribal lands." *Gila River*, 626 F.2d at 714. There is no implication of such rights in the present case. *See id.* While the United States could criminally prosecute anyone suspected of violating §§ 1154 and 1156, there is no basis in the above-cited case law for concluding that the United States could, as a trustee, establish standing to allege the claims that the Tribe seeks to allege in this case. As a result, § 1362's requirement of equivalent treatment for the Tribe cannot avail it of federal jurisdiction.

And even if these claims fell within the United States' standing as trustee, they would not fall within the requirement of equivalent treatment that *Moe* read into § 1362. As noted above, *Moe* only held that "in certain respects tribes suing under [§ 1362] were to be accorded treatment similar to that of the United States had it sued on their behalf." *Moe*, 425 U.S. at 474. At issue in *Moe* was a federal statute, 28 U.S.C. § 1341, that prohibits district courts from enjoining the assessment, levy, or collection of state taxes "where a plain, speedy and efficient remedy may be had in the courts of such State." But § 1341 is inapplicable to suits by the United States and its instrumentalities to protect itself from unconstitutional state exactions. *Moe*, 425 U.S. at 470 (citing *Dep't of Emp't v. United States*, 385 U.S. 355, 358 (1966)). *Moe* held that § 1362 conferred the plaintiff tribe with the same authority to assert its rights that the United States would have had, incorporating the United States' immunity from § 1341.

As the Supreme Court explained in *Blatchford*, the effect of *Moe* was simply to remove an obstacle to suit that Congress itself had created. 501 U.S. at 784-85. The Court explained that *Moe* did not relate to "congressional 'delegation'" of the United States' authority—rather, *Moe* simply requires that tribes suing under § 1362 be accorded "equivalence of treatment" with the United States in certain procedural respects. *Moe* did not expand the scope of § 1362's federal-question jurisdiction—it simply read § 1362 as *also* extending to Indian tribes some (but not all) of the procedural advantages afforded to the United States when it litigates as a civil plaintiff. In other

words, *Moe* reads some things *into* § 1362, but it does not read anything *out* of § 1362, particularly the requirement of a federal question, "and it is well established that invoking § 1362 does not change a plaintiff tribe's duty to show that its complaint raises a substantial federal question." *Sac & Fox Nation of Oklahoma v. Cuomo*, 193 F.3d 1162, 1165 (10th Cir. 1999); *see, Kaw Nation ex rel. McCauley v. Lujan*, 378 F.3d 1139, 1142 (10th Cir. 2004); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1077 (9th Cir. 1990); *Chilkat Indian Vill. v. Johnson*, 870 F.2d 1469, 1470 (9th Cir. 1989); *see also Oneida Indian Nation v. Cnty. of Oneida*, 414 U.S. 661, 667 (1974).

In sum, § 1362 does not help the Tribe any more than § 1331. Although § 1362 has been read to have a slightly broader effect than § 1331, that effect is limited to cases in which the claims asserted could have been brought by the United States as trustee, and its scope is limited to according the Tribe "treatment similar to that of the United States" in certain procedural respects. *See Moe*, 425 U.S. at 473-74. This is not a trusteeship case, equivalent treatment within the meaning of *Moe* is not at issue here, and § 1362 plainly requires the Tribe to show that its complaint raises a substantial federal question. As explained above, it has not done so.

## CONCLUSION

For the above-stated reasons, the Court finds that it lacks jurisdiction, and the Tribe's claims will be dismissed without prejudice. Whatever merit the Tribe's claims may have, they are not claims that depend on the resolution of a substantial question of federal law—and therefore, they are not claims that can be decided in federal court.

The defendants' various Rule 12 motions will be denied as moot. Some of the defendants have also filed a motion to strike (filing 155), asking the Court to strike the index of evidence (filing 142) that the Tribe submitted in opposition to the defendants' Rule 12 motions. That motion will be denied for two reasons. First, because at least one defendant's motion was a Rule 12(b)(1) motion, see filing 129, it was not inappropriate to submit evidence in response. *Osborn*, 918 F.2d at 729 n.6. And second, of course, the motion to strike is also moot in light of the Court's decision to dismiss the Tribe's claims.

IT IS ORDERED:

1.   The Oglala Sioux Tribe's claims are dismissed without prejudice for lack of jurisdiction.

2.  The defendants' motions to dismiss (filings 114, 115, 116, 118, 120, 121, 122, 125, 129, and 131) are denied as moot.

3.  The motion to strike filed by certain of the defendants (filing 155) is denied.

4.  All claims having been dismissed, this case is terminated.

5.  A separate judgment will be entered.

Dated this 1st day of October, 2012.

BY THE COURT:

John M. Gerrard
United States District Judge